UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

AUTOMOBILE INSURANCE COMPANY OF
HARTFORD, CONNECTICUT, a Connecticut
corporation,

                Plaintiff,

       v.

NORMAL L. ABEL, and EARL SCHUMAN,

                Defendants.

Case No. CV 08-1004 AC

OPINION AND ORDER

ACOSTA, Magistrate Judge:

*Opinion and Order*

Before the court is the motion for partial summary judgment filed by Automobile Insurance

Company of Hartford, Connecticut ("AIC"), against defendants Norman Abel ("Abel") and Earl

Schuman ("Schuman") (collectively referred to as "Defendants"). AIC argues that no genuine issue

of material fact exists with regard to the issue of causation and Defendants' liability, and that AIC's

motion should be granted. Defendants contend that the issue of causation and liability are questions

OPINION AND ORDER              1                          {LNP}

for the jury and that AIC's motion for summary judgment must be denied.

Genuine issues of material fact exist with regard to Defendants' liability as well as the cause of the fire. Accordingly, AIC's motion is denied.

*Background*

In 1997, Abel began leasing unit 202 in building 25 of the Summit Condominiums in Lake Oswego, Oregon ("Unit 202"), from Schuman, the unit owner. (Abel Dep. 12:14-16.) Between 2002 and 2003, Deidre Decker ("Decker") moved in to Unit 202 with Abel. (Abel Dep. 13:25.) Decker suffered from cerebral vasculitis.[1] (Abel Dep. 16:8-11.) The clinical manifestations of cerebral vasculitis include headache, seizures, confusion, altered consciousness, and loss of the ability to use a body part. (Pl.'s Ex. C.) Schuman was unaware of Decker's physical condition or that she had moved into Unit 202. (Schuman Decl. ¶ 5.)

John and Patricia Stuart lived in a neighboring unit located on the third floor of building 25 in the Summit Condominiums ("Unit 210"). (Pl.'s Concise Statement of Material Fact ("Pl.'s CSMF") ¶ 3.) AIC insured John and Patricia Stuart against fire damage to real and personal property located within Unit 210. (Pl.'s CSMF ¶ 2.)

On August 29, 2006, Abel left Unit 202 between 3:00 a.m. and 4:00 a.m. (Abel Dep. 43:16-18.) Decker remained in Unit 202 while Abel was gone. (Pl.'s CSMF ¶ 13.) At approximately 2:30 p.m., and while Abel was still away at the Multnomah Athletic Club ("MAC"), the Lake Oswego Fire Department ("Fire Department") received a report of a fire in Unit 202 ("the Fire"). (DeHart Dep. 10:2-5; Abel Dep. 47:15-16.) Decker died in the Fire. (Pl.'s CSMF ¶ 17.) The Stuarts sustained damage to their property located within Unit 210 as a result of the Fire. (Pl.'s CSMF ¶ 3.)

---

[1]Also referred to by the parties as "central nervous system vasculitis."

Upon Abel's return to Unit 202, Stacey Bernert ("Bernert"), a police officer with the Lake Oswego Police Department, interviewed Abel. (Bernert Dep. 22:17-20.) Bernert reported that Abel described Decker as a "sloppy smoker." (Bernert Dep. 33:18-21.) Later in his deposition, however, Abel explained that his use of the term "sloppy smoker" meant:

> [F]rom my bar business, being in the bar business for years, I used to watch people sit at the bar, get a long ash on their cigarette at the end and just let it drop. . . off . . . . It was a cold ash, and I used to just call them 'sloppy smokers.' They had an ashtray in front of them, but they would just let their ashes . . . go and they'd drop in their lap. That's what I meant.

(Abel Dep. 35:20-36:4.)

Fire Department Emergency Medical Services Coordinator and Deputy Fire Marshal Steven Wayne DeHart ("DeHart"), along with other Fire Department staff, conducted a physical examination of the fire scene to determine the cause of the Fire. (DeHart Dep. 13:17-15:5.) In his deposition, DeHart testified that the Fire Department determined the origin of the Fire to be within the immediate vicinity of a small couch positioned against the south wall of the living room inside Unit 202. (DeHart Dep. 41:24-42:5.) DeHart indicated that the Fire Department searched for smoking paraphernalia, including cigarette butts, lighters, matches, and ashtrays, but did not recover any such items. (DeHart Dep. 43:13-21.) DeHart testified that after approximately two days spent by the Fire Department investigating the origin of the Fire, it was unable to determine on a more likely than not basis the cause of the Fire. (DeHart Dep. 62:15-21.)

AIC hired fire investigator Ryan B. Fields ("Fields") to evaluate the fire scene and to determine the cause of the Fire. (Fields Decl. ¶ 3.) In his declaration, Fields indicated that during the course of his investigation into the origin and cause of the Fire, he personally inspected and examined building 25 at the Summit Condominiums, interviewed Patricia Stuart, reviewed the fire

origin and cause investigation reports, photographs, and diagrams prepared by the Oregon State Police and the Fire Department, reviewed interviews completed by the Lake Oswego Police Department, and reviewed the depositions of DeHart, Abel, Bernert, and Detective James Peterson of the Lake Oswego Police Department.  (Fields Decl. ¶ 7.)  After his review, Fields concluded that "more likely than not this fire was the result of the careless smoking by Dedrea [sic] Decker." (Fields Decl. ¶ 8b.)

AIC alleges Decker's negligent smoking caused the Fire.  Defendants contest the actual cause of the Fire.  AIC moves for partial summary judgment arguing there is no genuine issue of material fact as to the origin and cause of the Fire, and that Defendants are liable to AIC as a matter of law for all damages its insured sustained as a result of the Fire.

*Legal Standard*

Summary judgment is appropriate only when the record shows that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c)(2).  A dispute is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986).  A fact is material if, under the substantive law of the case, resolution of the factual dispute could affect the outcome of the case.  *Id.* at 248.  The moving party bears the initial burden of showing "the absence of a genuine issue concerning any material fact." *Adickes v. S.H. Kress & Co.*, 398 U.S. 144 (1970). The moving party satisfies its burden by offering the district court the portions of the record it believes demonstrates the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The court does "not weigh the evidence or determine the truth of the matter, but only determines whether there is a genuine issue for trial." *Balint v. Carson City, Nev.*, 180 F.3d

1047, 1054 (9th Cir. 1999).

Once the moving party meets its initial burden, the nonmoving party must establish the existence of a genuine issue of material fact. FED. R. CIV. P. 56(e). To meet this burden, the nonmoving party must make an adequate showing as to each element of the claim for which it will bear the burden of proof at trial. *Celotex*, 477 U.S. at 322-23. The nonmoving party "may not rest upon the mere allegations or denials of his pleading but . . . must set forth specific facts showing that there is a genuine issue for trial." *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 288-89 (1968). In order to establish that there is a genuine issue of material fact, the nonmoving party "need only present evidence from which a jury might return a verdict in [the nonmoving party's] favor." *Anderson*, 477 U.S. at 257. The evidence set forth must be sufficient to allow a rational jury to find for the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). A "mere scintilla of evidence in support of the [nonmoving party's] position [is] insufficient."[2] *Anderson*, 477 U.S. at 252. Additionally, the court must view the evidence in the light most favorable to the nonmoving party, and must draw all reasonable inferences from the underlying facts in favor of the nonmoving party. *Bell v. Cameron Meadows Land Co.*, 669 F.2d 1278, 1984 (9th Cir. 1982).

*Discussion*

I.    Preliminary Procedural Matter

Most of the exhibits provided by the parties do not comply with Federal Rule of Civil

---

[2]In the Findings and Recommendation which this Opinion and Order replaces, the letters "in" were inadvertently omitted from the front of the word "sufficient." The court has corrected this error in this Opinion and Order. This correction does not affect the court's analysis or conclusion on the merits of the underlying partial summary judgment motion.

OPINION AND ORDER            5                                    {LNP}

Procedure 56(e)'s requirement that admissible evidence be submitted in support of or opposition to a motion for summary judgment. In *Orr v. Bank of America*, 285 F.3d 764 (9th Cir. 2002), the Ninth Circuit clearly explained the authentication requirements for evidence submitted in support of or opposition to a summary judgment motion:

> A trial court can only consider admissible evidence in ruling on a motion for summary judgment. *See* FED. R. CIV. P. 56(e); *Beyene v. Coleman Sec. Servs., Inc.*, 854 F.2d 1179, 1181 (9th Cir. 1988). Authentication is a "condition precedent to admissibility," and this condition is satisfied by "evidence sufficient to support a finding that the matter in question is what its proponent claims. FED. R. EVID. 901(a). We have repeatedly held that unauthenticated documents cannot be considered in a motion for summary judgment. *See Cristobal v. Siegel*, 26 F.3d 1488, 1494 (9th Cir. 1994); *Hal Roach Studios, Inc. v. Richard Feinder & Co., Inc.*, 896 F.2d 1542, 1550-51 (9th Cir. 1989); *Beyene*, 854 F.2d at 1182, *Canada v. Blain's Helicopters, Inc.*, 831 F.2d 920, 925 (9th Cir. 1987); *Hamilton v. Keystone Tankship Corp.*, 539 F.2d 684, 686 (9th Cir. 1976).

*Orr*, 285 F.3d at 773. Specifically regarding documents authenticated through personal knowledge, the court explained that such documents must be "attached to an affidavit that meets the requirements of FED. R. CIV. P. 56(e) and the affiant must be a person through whom the exhibits could be admitted into evidence." 285 F.3d at 773-74. In describing the admissibility of deposition evidence, the court explained, "[a] deposition or extract therefrom is authenticated in a motion for summary judgment when it identifies the names of the deponent and the action and includes the reporter's certification that the deposition is a true record of the testimony of the deponent." 285 F.3d at 774.

In this case, AIC failed to properly authenticate all but two of its submitted exhibits, Abel failed to properly authenticate all of his submitted evidence, and only two of Schuman's exhibits have been properly authenticated. None of the parties' submitted deposition excerpts include the court reporter's certification that the deposition is a true record of the testimony of the deponent.

Furthermore, AIC's counsel attempts to authenticate what appears to be an Internet printout of the signs and symptoms of "Central Nervous System Vasculitis" ("AIC's Ex. C"), attached to the January 12, 2010, Pierson Declaration.  However, AIC's counsel provides no facts in his declaration to establish that he is competent to testify to the medical information which AIC's Ex. C purports to contain or which otherwise establish the admissibility of AIC's Ex. C, as required by FED. R. CIV. P. 56(e).  The same flaw arguably exists with respect to AIC's exhibit bearing the title "*NFPA 921 Guide for Fire & Explosion Investigations* (2008 edition)" [("NFPA 921")], attached to the February 12, 2010, Pierson Declaration.  Pierson is an attorney, not a forensic fire investigator, and cannot authentic NFPA 921 nor establish that NFPA 921 is an industry standard.  Although AIC's fire investigator, Ryan Fields, also submits a declaration in which he references provisions of NFPA, he never states that NFPA is a generally accepted standard among fire investigators for conducting fire investigations, nor does he cross-reference the NFPA 921 document attached to the Pierson declaration.  "Federal Rule of Evidence 702 obligates judges to ensure that any scientific . . . evidence admitted is relevant and *reliable*." *Kuhmo Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 174 (1999) (citing *Daubert v. Merrill Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 589 (1993) (emphasis added)).  AIC's NFPA 921 exhibit does not meet this standard.

Despite the inadmissibility of most of the parties' evidence, the court addresses the merits of the summary judgment motion and opposition because, as explained below, even assuming the admissibility of AIC's exhibits and the exhibits of the non-moving parties, AIC's motion should be denied.

II.    Merits

AIC moves for partial summary judgment on two grounds.  First, it seeks a determination that

Decker caused the Fire.  Second, AIC asks the court to find in its favor and against Abel and Schuman on liability.

In the insurance context, subrogation permits an insurer to recover what it has paid to its insured by, in effect, standing in the shoes of the insured and pursuing a claim against the wrongdoer. *Koch v. Spann*, 193 Or. App. 608, 612, *rev. den.*, 337 Or. 547 (2004).  Accordingly, AIC is entitled to recover from Abel and Schuman anything that the Stuarts would have been entitled to recover from Defendants.  AIC specifically asserts that Decker's cerebral vasculitis condition and careless smoking habits caused the Fire, and that because Decker lived in Unit 202 as Defendants' guest, Abel and Schuman are liable for Decker's actions.

> A.      *Cause of the Fire*

AIC claims the cause of the Fire was the result of careless smoking by Decker which ignited the small couch near the south wall of the living room of Unit 202.  Defendants claim there is a question of fact as to the cause of the Fire.  The evidence of the Fire's cause is in dispute, and summary judgment on this issue thus is inappropriate.

First, DeHart's testimony and Fields's testimony conflict on the cause of the Fire.  DeHart stated that after two days of investigation, neither he nor his staff were able to determine the cause of the Fire on a "more likely than not" basis, nor could they find any evidence of smoking paraphernalia at or near the location where the Fire originated.  (DeHart Dep. 43:13-21.)  Field agrees with DeHart about the origin of the fire – "the immediate vicinity of a small couch positioned against the south wall of the living room inside Unit #202" (Fields Decl. ¶ 8a.) – but disagrees with Hart as to the cause.  Fields concluded that "more likely than not this fire was the result of careless smoking by Dedrea [sic] Decker which ignited the small couch near the south wall of the living

room,"  (Fields Decl. ¶ 8b.)

Second, Fields's opinion on the cause of the fire is not admissible because it is conclusory. Expert opinion that is conclusory is not admissible to support or defeat a summary judgment motion. *See, e.g.*, *Luke v. Family Care and Urgent Medical Clinics*, No. 06-35056, 2007 WL 2461850, at *2 (9th Cir. Aug. 21, 2007) ("An expert opinion that is merely a conclusory statement without adequate supporting facts is insufficient to defeat a summary judgment motion.") (quoting *Guile v. Ballard Cmty. Hosp.*, 70 Wash. App. 18, 851 P.2d 689, 693 (1993)); *Walton v. U.S. Marshals Service*, 492 F.3d 998, 1008 (9th Cir. 2007) (expert opinion is admissible and may defeat summary judgment if it appears the affiant is competent to give an expert opinion and the factual basis for the opinion is stated in the affidavit; conclusory report or allegation is insufficient to withstand motion for summary judgment).  In his declaration, Fields describes no scientific method used to determine that Decker was smoking at the time of the Fire, that she was smoking carelessly at that precise time, and that her allegedly careless smoking was the cause of the Fire.  Indeed, Fields provided no factual bases in his declaration upon which such determinations could be based.

In sum, viewing the evidence in the light most favorable to Defendants as the nonmoving parties, a genuine issue of material fact exists as to the Fire's cause and whether Decker, or some other source, caused the Fire.  Accordingly, AIC's motion for partial summary judgment on causation is denied.

### B.    *Liability of Defendant Abel*

#### 1.    common law duty

AIC argues Abel had a common law duty to prevent the Fire and cites *Comfort v. Stadelman Fruit, Inc.*, 285 Or. 525, 533 (1979), for the proposition that "[a] defendant is liable for the spread

of a fire that results from conditions created on the defendant's property he or she should have anticipated would likely lead to the start of a fire." In *Comfort*, the court restated the holding announced in *Hesse v. Century*, 267 Or. 53 (1973), that "absent statute, one is not liable for the spread of a fire of unknown origin started on his property unless as a result of conditions created on his property he should have anticipated that a fire was likely to start." *Comfort*, 285 Or. at 533. The term "origin," as used by the court, clearly meant "cause of the fire." *Id.* ("It was of unknown origin, though, only in that the fire may have been started by arson, defendant's employes [sic], or by spontaneous combustion.")

The court already has found that genuine issues of material fact exist with regard to AIC's contention that the cause of the Fire is now or was at the time known. Although AIC contends that "[t]he cause of the fire was the result of the careless smoking by Deidre Decker which ignited the small couch near the south wall of the living room of unit 202" (Pl.'s Mem. in Supp. of Mot. for Summ. J. at 5), DeHart's testimony contradicts AIC's evidence on this point and, in any case, Fields's expert opinion on causation, as currently set out in his declaration, is not admissible. Furthermore, AIC has not shown on summary judgment that Abel "should have anticipated" that Decker's smoking was likely to start a fire, or even that Decker's smoking was a "condition created on the property" within the meaning contemplated under the *Comfort* decision.

In *Aune v. Oregon Trunk Railway*, 151 Or. 622 (1935), the defendant railway company's property conditions involved unlocked empty box cars and no watchman. *Arneil v. Schnitzer*, 173 Or. 179 (1944) involved several large disorderly piles of debris, a large pile of oil-soaked sawdust, no fire-fighting equipment, and no watchman. *Pac. N.W. Bell v. Century Home*, 267 Or. 46 (1973), involved a building with a wooden trash box containing sawdust with linseed oil, refuse and wood

trimmings.  All of these cases involved property conditions that were hazardous or reasonably likely to result in a fire and none of them involved a person as the alleged hazardous condition.  In the present case, there is no evidence to support a finding that the Fire started because of similar hazardous conditions, such as flammable materials stored in Unit 202.  Furthermore, AIC presents no authority for its implied premise that a person, including one who smokes or who has a medical condition, constitutes a property condition that invokes the rule in *Comfort*.  Accordingly, *Comfort* is inapposite here.

Abel, relying on the Restatement (Second) of Torts, argues he did not have a duty to control Decker and is not liable for the fire.  The Restatement provides:

> There is no duty . . . to control the conduct of a third person as to prevent him from causing physical harm to another unless:
>
> (a) a special relationship exists between the actor and the third person which imposes a duty upon the actor to control the third person's conduct, or
>
> (b) a special relationship exists between the actor and the other which gives to the other a right to protection.

Restatement (Second) of Torts §315 (1965).  Abel had no relationship with AIC or its insured, thus section 315(b) does not apply.  As for section 315(a), the relationship between the actor and a third person which require the actor to control the third person's conduct are set forth in Restatement §§ 316-320, and include the duty of a parent to control his child in § 316; the duty of a master to control his servant in § 317; the duty of an owner of land or chattels to control the conduct of his licensee in § 318; the duty of those in charge of persons having dangerous propensities in § 319; and the duty of a person having custody of another to control the conduct of the third person in § 320.  Abel was

OPINION AND ORDER                    11                             {LNP}

neither Decker's parent (§ 316), nor her employer (§ 317).  Similarly, section 320[3] applies to "a

sheriff or peace officer, a jailer or warden of a penal institution, officials in charge of a state asylum

or hospital for the criminally insane, . . . teachers or other persons in charge of a public school[,] .

. . persons conducting a private hospital or asylum, a private school, and to lessees of convict labor,"

which is not true of the present case and therefore § 320 does not apply.  Restatement (Second) of

Torts § 320 cmt. a (1965).

Accordingly, only sections 318 and 319 could apply to the current case.

Section 318 provides:

> If the actor permits a third person to use land or chattels in his possession otherwise
> than as a servant, he is, if present, under a duty to exercise reasonable care so to
> control the conduct of the third person as to prevent him from intentionally harming
> others or from so conducting himself as to create an unreasonable risk of bodily harm
> to them, if the actor
>
> > (a) knows or has reason to know that he has the ability to control the third
> > person, and
>
> > (b) knows or should know of the necessity and opportunity for exercising such
> > control.

Restatement (Second) of Torts § 318 (1965).  Comment b to the Restatement provides that "[t]he rule

stated in this section is applicable where the possessor of . . . land is present when the . . . activity

---

[3] One who is required by law to take or who voluntarily takes the custody of another under
circumstances such as to deprive the other of his normal power of self-protection or to subject him
to association with persons likely to harm him, is under a duty to exercise reasonable care to
control the conduct of third persons as to prevent them from intentionally harming the other or so

conducting themselves as to create an unreasonable risk of harm to him, if the actor

> (a) knows or has reason to know that he had the ability to control the conduct of the third
> persons, and

> (b) knows or should know of the necessity and opportunity for exercising such control.

is being carried on with his permission, and when, therefore, he has not only the ability to control the conduct of the third person as possessor, but also the opportunity to do so."  Restatement (Second) of Torts § 318 cmt. b (1965).  This section makes clear that an actor who permits a third person to use his land owes a duty to exercise reasonable care to control the third person's conduct only if the actor is present.  Abel was away at the MAC and was not present in Unit 202 at the time the Fire started.  In his absence, he neither had the ability nor the opportunity to control Decker's conduct.  Further, comment c states that "[t]he duty to exercise reasonable care to control the conduct of third persons for the protection of others requires the actor to exercise his ability to control such third person's conduct not only when he knows of the necessity for so doing, but also when as a reasonable man he should know of it."  Restatement (Second) of Torts § 318 cmt. c (1965).  "The question of what a reasonable person would do under various circumstances, as in the usual negligence case, is usually a question of fact to be decided by the jury . . . ."  *Oregon Auto. Ins. v. Fitzwater*, 271 Or. 249, 258 (1975).  The Oregon Court of Appeals addressed negligence and summary judgment in *Jones v. Oberg,* 52 Or. App 601, 607 (1981):

> The issue of negligence is ordinarily a question of fact to be decided by the jury.  The court's function is not to decide whether, if it were the trier of fact, it would conclude defendant was not negligent.  Rather, the court is merely to determine whether all reasonable minds would necessarily conclude that defendant was not negligent.  Put another way, summary judgment in a negligence action is appropriate only where, from the facts, reasonable persons could draw but one inference and that inference supports the conclusion that defendant was not negligent, or if he was guilty of negligence, it was not the cause of plaintiff's injury.  Thus, the court should withdraw the issue only if it can say that the defendant's conduct clearly falls either above or below the community's standard of reasonable conduct.

(internal quotation marks and citation omitted).  Thus, whether Abel knew of the necessity to control Decker's smoking or whether, as a reasonable person, he should have known, are questions for the jury.

Regarding section 319, it states that "[o]ne who voluntarily takes charge of a third person whom he knows or should know is likely to cause bodily harm to others if not controlled is under a duty so to exercise his control as to prevent the third person from doing such harm."  Restatement (Second) of Torts § 319 (1965).  The comments are instructive on this point as well:

> *The rule stated in this Section applies to two situations.*  The first situation is one in which the actor has charge of one or more of a class of persons to whom the tendency to act injuriously is normal.  The second situation is one in which the actor has charge of a third person who does not belong to such a class but who has a peculiar tendency so to act of which the actor from personal experience or otherwise knows or should know." (emphasis included in original).

Restatement (Second) of Torts § 318 cmt. a (1965).  There is no evidence to support a finding on summary judgment that Decker's alleged injurious conduct was normal.  AIC alleges, however, that Abel was aware of Decker's injurious tendencies from personal experience:  "prior to the fire, Ms. Decker was reported to be shaky and unsteady; if she fell she was not able to get herself up and would lay on the floor until defendant Abel returned home."  (Pl.'s CMSF ¶ 10.)  However, Abel asserts that "prior to the fire, there was never an instance when [he] came home from work to find anything present in the unit that caused him concern either for Decker's safety or his."  (Abel's Resp. to Pl.'s CSMF ¶ 10.)  Accordingly, a genuine issue of material fact exists with regard to whether Abel was aware of Decker's alleged injurious tendencies from personal experience.

Because several genuine issues of material fact are raised with regard to Abel's liability under the common law, as discussed above, AIC is not entitled to summary judgment against Abel and summary judgment on this ground is denied.

   2.  statutory duty

AIC argues Abel is liable under Oregon's Residential Landlord Tenant Act, which provides, in pertinent part, "[t]he tenant shall behave and require other persons on the premises with the

consent of the tenant to behave in a manner that will not disturb the peaceful enjoyment of the premises by neighbors." OR. REV. STAT. 90.325(1)(g). The statute further provides: "[a] tenant may ... [n]ot deliberately or negligently destroy, deface, damage, impair or remove any part of the premises or knowingly permit any person to do so." OR. REV. STAT. 90.325(2)(b).

Abel contends he was under no statutory obligation to AIC because AIC failed to prove each of the four elements necessary for raising a statutory negligence claim as set forth in *McAlpine v. Multnomah County*, 131 Or. App. 136, 144 (1994), *rev. den.,* 320 Or. 507 (1995). *McAlpine* involved a motion to dismiss, whereas the present case involves a motion for summary judgment. Although the standards are different, a party alleging statutory liability must establish the same dispositive elements. *See Bennett v. Spear*, 520 U.S. 154, 168 (1997) (stating that, in a motion to dismiss, general factual allegations of injury resulting from the defendant's conduct may suffice at the pleading stage as courts " 'presum[e] that general allegations embrace those specific facts that are necessary to support the claim' ", but in a motion for summary judgment, plaintiff must set forth specific facts by affidavit or other evidence.)

Under *McAlpine*, a plaintiff relying on a statute to support a negligence claim must show that: (1) defendant violated a statute; (2) plaintiff was injured as a result of that violation; (3) plaintiff was a member of the class of persons meant to be protected by the statute; and (4) the injury plaintiff suffered is of a type that the statute was enacted to prevent. *McAlpine,* 131 Or. App. at 144. Determining whether ORS 90.325 is intended to apply to the conduct alleged here is a matter of statutory construction undertaken by the court. Statutory construction always starts with the language of the statute itself. *U.S. v. Fuller*, 531 F.3d 1020, 1025 (9th Cir. 2008) (citing *Mitchell v. United States (In re Mitchell)*, 997 F. 2d 1318, 1320 (9th Cir. 1992)). If the text of a statute is

unambiguous, its plain meaning controls.  *U.S. v. Treadwell*, 593 F.3d 990, 1006 (9th Cir. 2010).

The court concludes that the statute applies here, because the Stuarts, as tenants, are within the class

of persons the statute is intended to protect.  However, the court also concludes that AIC has not

demonstrated that no genuine issues of material fact exist which would allow entry of summary

judgment in its favor.

First, the evidence is disputed regarding Abel's conduct.  Under ORS 90.325(1), Abel

was required to conduct himself or must have required Decker to conduct herself in a manner that

would not disturb the Stuarts' peaceful enjoyment of Unit 210.  It is undisputed that Abel did not

directly behave in a manner affecting the Stuarts' enjoyment of the premises, because AIC does not

allege that Abel himself engaged in the conduct that caused the Fire.  The question then is whether

Abel failed to require Decker to behave in a manner that would not disturb the Stuarts' peaceful

enjoyment of Unit 210.  AIC has failed to provide sufficient facts for this court to conclude as a

matter of law that the Stuarts were deprived of the peaceful enjoyment of Unit 210 because of Abel's

failure to control Decker's behavior.  There is conflicting evidence about what Abel knew regarding

Decker's smoking habits, the effect of her medical condition on her ability to smoke safely, and

whether she presented a level of risk such that Abel should have taken steps to prevent or monitor

her smoking while in Unit 202.

Second, as noted previously, the evidence is disputed whether Decker's conduct caused

the Fire.  DeHart testified that:

> [W]e actually . . . got down on our hands and knees with — we use a pointing trowel,
> which is only a half an inch wide, and sift through the debris piece by piece looking
> for anything out of the ordinary.  In this particular case, because there was, you know,
> a suspected or possible smoking related issue, . . . we were looking for smoking
> paraphernalia:  Cigarette butts, lighters, matches, ashtrays, anything . . . . But when
> we got all done, we found nothing.

(DeHart Dep. 43:7-21.)  From this evidence, a jury could conclude that the Fire was not related to Decker's smoking, which is AIC's theory here.  If the jury so decides, then no violation of ORS 90.325 would have occurred and, thus, Abel would not have violated the statute.  Therefore, a genuine issue of material fact exists with regard to the first element under *McAlpine*.

Accordingly, AIC's motion for partial summary judgment against Abel under ORS 90.325 is denied.

### C.    Liability of Defendant Schuman

AIC argues that Schuman, the owner of Unit 202, is liable for Decker's conduct under three different theories based on ORS 100.345[4] and the Oswego Summit Condominium Bylaws[5] (the "Bylaws").  First, AIC contends Schuman is liable because Decker was Abel's "guest."  In the alternative, AIC seeks to hold Schuman liable because Decker was a "visitor" of Abel.  Finally, AIC asserts that Schuman is legally responsible because Decker was an "invitee" of Abel.  The court addresses each argument in turn.

### 1.    Decker as "guest"

---

[4]The Oregon Condominium Act requires unit owners to comply with the condominium Bylaws ("Each unit owner and the declarant shall comply with the bylaws and with the administrative rules and regulations adopted pursuant thereto, and with the covenants, conditions and restrictions in the declaration or in the deed to the unit.  Failure to comply therewith shall be grounds for an action maintainable by the association of unit owners or by an aggrieved unit owner.")  OR. REV. STAT. 100.545.

[5]Article VII, Paragraph 3, subparagraph (c) of the Oswego Summit Condominium Bylaws states: "If, due to the act or neglect of a unit owner, or of a guest, or other authorized occupant, or visitor of such unit owner, damage shall be caused to the common elements or to a unit owned by others, or maintenance, repairs or replacements shall be required which would otherwise be a common expense, then such unit owner shall pay for such damage and such maintenance, repairs and replacements as may be determined by the Association, to the extent not covered by the Association's insurance.

To evaluate AIC's claim that Schuman is liable for Decker's conduct as the "guest" of Abel, the court first must define the term "guest." Under federal regulations, a guest is defined as "a person temporarily staying in the unit with the consent of a tenant[.]" 24 C.F.R. § 5.100 (2002). BLACK'S LAW DICTIONARY 776 (9th ed. 2009), defines "guest" as a "person who is entertained or to whom hospitality is extended." MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY 517 (10th ed. 1998), similarly defines "guest". Under any of these definitions, a question of fact exists whether Decker was Abel's guest.

It is a much different matter, however, whether Schuman is liable for the negligent actions of his tenant's guest. In *Park v. Hoffard*, 315 Or. 624 (1993), "[t]he court held that Restatement (Second) of Torts section 379A (1965) 'states an appropriate rule with respect to a landlord's liability for physical harm to persons off the rental property.'" *Buchler v. State By and Through Oregon Corrections Div.*, 316 Or. 499, 505 (1993) quoting *Park*, 315 Or. at 632. Restatement (Second) of Torts § 379A provides:

> A lessor of land is subject to liability for physical harm to persons outside of the land caused by activities of the lessee or others on the land after the landlord transfers possession if, but only if:
>
> (a) the lessor at the time of the lease consented to such activity or knew that it would be carried on; and
>
> (b) the lessor knew or had reason to know that it would unavoidably involve such an unreasonable risk, or that special precautions necessary to safety would not be taken.[6]

---

[6]The Restatement (Second) of Property § 18.4 (1977), states a rule nearly identical to Restatement (Second) of Torts § 379A. A landlord is subject to liability for physical harm to persons outside the leased property caused by activities of the tenant or others on the leased property after the landlord transfers possession only if:

> (1) the landlord at the time of the lease consented to the activity or knew that it would be carried on; and

AIC has presented no evidence to support a finding that Schuman could be liable for Abel's guest's conduct. In fact, the only evidence in the record establishes that Schuman had no knowledge that Decker was in Unit 202. Liability requires evidence that Schuman knew of or had reason to know of, or consented to, Decker's presence in Unit 202, and that her presence in Unit 202 presented an unreasonable risk. Schuman states: "I did not know that Deidre Decker was living with Mr. Abel. Further, I did not know her personally nor did [he] know anything about her medical condition or behaviors." (Schuman Decl. ¶ 5.) AIC presents nothing to refute this evidence. When viewed in the light most favorable to Schuman, the nonmoving party, the record does not support the conclusion that Schuman knew or had reason to know of Decker's presence in Unit 202, that Decker's smoking habits presented an unreasonable risk, or that Decker had a medical condition that combined with her smoking to create an unreasonable risk. Accordingly, AIC's motion for summary judgment against Schuman for liability based on the activity of Abel's guest is denied.

      2.    Decker as "visitor"

Next, AIC argues Schuman is legally responsible for Decker's actions because Decker was a visitor to Unit 202 at the time of the Fire. Again, the starting point is the definition of the key term. BLACK'S LAW DICTIONARY 1708 (9th ed. 2009), defines "visitor" as a "person who goes or comes to a particular person or place." MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY 1321 (10th ed. 1998), defines "visitor" as "one that visits". Whether Decker was a visitor is a jury question. The evidence on summary judgment is that at the time of Fire Decker had been living in Unit 202 for as

_____

    (2) the landlord knew or had reason to know that it would unavoidably involve an unreasonable risk, or that special precautions necessary to safety would not be taken.

long as four years.  (Abel Dep. 13:25-14:2.)  Schuman denies that Decker was a visitor and asserts

that she instead was an unauthorized occupant of Unit 202 (Def. Schuman's Resp. to Pl.'s Mo. for

Summ. Judgment 4; Schuman Decl. ¶¶ 4, 5, 7); thus, he is not liable for damages caused by Decker's

conduct.  Because a jury could reach different conclusions on the question of whether Decker was

or was not a visitor at the time of the Fire, AIC's motion for summary judgment against Schuman

for liability based on Decker's status as a visitor is denied.

> 3.    Decker as "invitee"

Lastly, AIC argues Decker was an "invitee" under Oregon law, relying on the "invitation test"

announced in *Walsh v. C&K Market, Inc.*, 171 Or. App. 536, 539 (2000), for determining whether

a person is an invitee.  *Walsh* states:

> Oregon has adopted two tests for determining whether a person is an invitee.  Under the first, the "economic advantage" test, anyone who comes on the premises for business that concerns the occupier, with the occupier's express or implied invitation, is an invitee.  Under the second, the "invitation" test, a person is an invitee when the occupier, expressly or impliedly, leads the person to believe that it intended visitors to use the premises for the purpose that the person is pursuing and that the use was in accordance with the intention or design for which the premises were adapted or prepared.

*Id.*  (citations omitted).  The *Walsh* court found that the "invitee" definition set forth in the

Restatement (Second) of Torts was consistent with this standard.  Section 332 of the Restatement

(Second) of Torts provides that:

> (1) An invitee is either a public invitee or a business visitor;
>
> (2) A public invitee is a person who is invited to enter or remain on land as a member of the public for a purpose for which the land is held open to the public;
>
> (3) A business visitor is a person who is invited to enter or remain on land for a purpose directly or indirectly connected with business dealings with the possessor of the land.

Restatement (Second) of Torts § 332 (1965).  A "public invitee" under section 332 also qualifies as an invitee under the *Walsh* test.  171 Or. App. at 540.

Under both *Walsh* and the Restatement, an "invitee" is a person who is invited onto land open to the public or onto property for the purpose of conducting business dealings; the term does not include one to whom is extended a personal invitation to enter one's home.  The *Walsh* court stated, "[t]he crucial issue under the invitation test is the nature of the invitation . . . [given] to the *general public*."  171 Or. App. at 540 (emphasis added).  Relying on *Baker v. Lane County*, 28 Or. App. 53, 58 (1977), the *Walsh* court stated, "invitee status will depend on both the purpose of the occupier who makes the invitation to the public and the understanding of the public that receives it."  *Walsh*, 171 Or. App. at 541.  In *Nelsen v. Nelsen*, 174 Or. App. 252, 256 (2001), the court differentiated an invitee from a license, stating that "[a]n invitee is a person who, with the occupier's invitation, comes upon a premises to conduct business that concerns the occupier.  By contrast, a licensee is a person who, with the occupier's permission, comes upon a premises for the licensee's own purposes, often social."

Again, questions of fact exist regarding Decker's status in Unit 202.  Abel testified in deposition that "[Decker] was in a financial mess at that time, and I had a bedroom and a bath and was just helping her . . . . I paid 100 percent of everything, cable, everything."  (Abel Dep. 14:17-21.)  Based on the evidence on summary judgment, a jury could conclude that Decker sought to advance her own purpose by having Abel take her in and, ultimately, allow her to live rent-free with him, an arrangement by which Abel would not appear to realize any monetary or material gain.

Furthermore, under the Bylaws, Schuman's liability turns on whether Decker is Schuman's invitee, not Abel's.  On that point, AIC has presented no evidence to support such a finding on

summary judgment.  The record evidence shows that Schuman was unaware and had no reason to

know of Decker's presence in Unit 202.  The lease agreement between Schuman and Abel specified

that Abel was "[n]ot to permit said premises to be occupied by any other persons than those listed

on the application", and required Abel to obtain written permission if any guest was to remain.

(Schuman Decl. ¶¶ 4, 7; Ex. 1 at 2.)  Decker was neither listed on the application nor did Abel obtain

Schuman's written permission for Decker to move in.  (*Id*.)  The Bylaws demand that the unit owner

pay for the damage of "such unit owner['s]" guests, and AIC has presented no evidence that Decker

was the invitee of Schuman, the unit owner.  Accordingly, AIC's motion for summary judgment

against Schuman for liability based on Decker's status as an invitee is denied.

*Conclusion*

For the reasons explained above, AIC's motion (#26) for partial summary judgment is

DENIED.

DATED this 24th day of June, 2010.


_____
            /s/   John V. Acosta
            JOHN V. ACOSTA
        United States Magistrate Judge